In the United States District Court
for the District of Utah, Central Division

| | |
|---|---|
| THERESA BENALLY,<br><br>Plaintiff,<br><br>vs.<br><br>KENNECOTT UTAH COPPER<br>CORPORATION,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:06CV00509<br><br>Judge J. Thomas Greene |

      This matter is before the Court on defendants' Motion to Dismiss in Part and for Summary Judgment pursuant to Rule 12(h)(3), 56(c). Fed. R. Civ. P.  Plaintiff is represented by Russell T. Monahan of the law firm, Cook & Associates, P.C., and defendant is represented by Martha J. Amundsen and Rebekah E. Meier of Kennecott Utah Copper Corporation. Defendant's motion was fully briefed and the Court heard oral argument on February 28, 2007. Following oral argument, the Court took the matter under advisement.

### I. FACTUAL BACKGROUND

      Defendant, Kennecott Utah Copper Corporation ("Kennecott"), employed Plaintiff, Theresa Benally, from July 1994 to September 2004. From 2001 to 2004, Benally was the only female employee under Supervisor Ron Ricks. Benally and Ricks had an uneasy relationship. Although Ricks never made gender-related comments to Benally, she heard that he said "women don't belong working here" and "men do a better job than women." This made her feel unwanted and miserable at work.

      Benally also claims that Ricks repeatedly excluded her from safety training

meetings, left her to work alone often, was verbally rude to her in evaluations, and intentionally stepped on her foot. Kennecott asserts that Ricks provided one-on-one training to Benally outside of training meetings, that it is common for a Slag Mill operator to work alone, that Ricks provided favorable written evaluations and was not excessively harsh in oral evaluations, and that Ricks did not intentionally step on her foot.

In January 2003, Benally complained to Superintendent, Rick Morrell. However, in her deposition or elsewhere in the record, she does not state what she told him. Morrell states that Benally expressed her objections to discipline she received due to her attendance record and did not mention discrimination. Subsequently, Benally complained to Kennecott's Human Resource Department ("HR") after Ricks noticed a large bruise on her neck and asked if she had been hit by a tennis ball. Kennecott reviewed the complaint and found no discriminatory behavior. Still, Kennecott required Ricks to complete online harassment prevention training.

In May 2003, Kennecott put Benally on probation, citing one safety violation and three unexcused absences. Benally disputes these reasons, saying her co-worker solely committed the safety violation and that Ricks marred her attendance record by mis-coding her FMLA leave. In the summer of 2003, Benally responded to a call for voluntary lay-off, but Kennecott denied her request and that of one male employee as neither of them qualified based on their combined years of service and retirement age. Benally claims she was denied because of her gender.

When Benally returned from FMLA and personal leave in January 2004, she claims Ricks made an insensitive comment regarding her deceased mother. Ricks denies the incident. Benally claims she contacted Morrell and HR, but has brought no evidence on that

point. Neither Morrell nor HR have recollection or record of this complaint.

On September 22, 2004, Benally and her white male co-worker failed to lock out a machine in the Slag Mill before maintenance. Kennecott had sufficiently trained Benally regarding the lockout/tagout procedure. Benally's co-workers state that the procedure is usually discretionary; it's necessary when someone is standing on the conveyor belt. Benally's co-worker was standing on the conveyor belt. However, Benally claims she could not see him. Ricks witnessed the incident and terminated both employees immediately. In the formal termination letter to Benally, Kennecott cites the September 2004 incident and Benally's probationary status as reasons for her termination. Yet, Benally asserts she was fired because of her gender.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FRCP 56(c). Courts must view the evidence in the light most favorable to the nonmoving party. Gross v. Burggraf Const. Co., 53 F.3d 1531, 1536-37 (10th Cir. 1995). The moving party must first show there is no genuine issue of fact and that there is an absence of evidence supporting the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). The nonmovant may not rely solely on pleadings or a mere scintilla of evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Evidence on which a jury could reasonably find for the plaintiff is required. Id. at 252.

Regarding the motion to dismiss, whenever a court lacks jurisdiction, "the court shall dismiss the action." FRCP 12(h)(3).

3

### III. ANALYSIS

Defendant requests summary judgment on Plaintiff's hostile work environment and discrimination claims. Defendant also moves to dismiss Plaintiff's retaliation claim for lack of jurisdiction. The Court denies defendant's motion to dismiss, and grants summary judgement for the defendant on all counts.

### A. Hostile Work Environment

The Court finds Ricks' infrequent actions did not create a hostile work environment as they were not pervasive or severe enough to be objectively hostile or create an inference of gender animus. An employer is vicariously liable for a hostile environment created by a supervisor. A hostile work environment fosters (1) subjectively unwelcome conduct and (2) objectively offensive conduct that (3) is motivated by the race or gender of the victim. Harris Forklift Systems, 510 U.S. 17, 17 (1993).

> *1.   Ricks' comments were not objectively offensive as they were not frequent or severe enough to affect Benally's work performance.*

Ricks' comments to and treatment of Benally did not affect her work performance because she carried out her duties and received favorable evaluations. Conduct is objectively offensive when it is "so severe or pervasive" as to "unreasonably interfer[e] with an individual's work performance or creat[e] an intimidating hostile, or offensive working environment." Meritor Sav. Bank, F.S.B v. Vinson, 477 U.S. 57, 65 (1986); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001). It is a question of fact, weighed in the totality of the circumstances. Bredeen, 532 U.S. at 270.

The factors to consider include: frequency, severity, whether conduct is physically

4

threatening or humiliating, and the environmental context. O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1098 (10th Cir. 1999); Gross, 53 F.3d at 1538. Single or isolated references are not enough. Daniels v. Essex Group, Inc., 937 F.2d. 1264, 1270 (7th Cir. 1991) Neither is discourtesy, rudeness, or lack of sensitivity. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Also, speech that might be unacceptable in some scenes is tolerated in other work environments. Gross, 53 F.3d at 1538 (tolerating some off color jokes in a blue-collar working environment).

Kennecott's memorandum to its motion lists several cases with facts that did not meet the legal standard of hostile work environment, but included substantially worse conduct than seen here. For example in Penry v. Federal Home Loan Bank of Topeka, the employer (1) touched and grabbed the plaintiffs on many occasions, (2) commented on their underwear, bras, and his "wet dreams", (3) tried to look down their shirts; (4) followed them to the restroom; (5) made various sexual innuendoes; and (6) insisted that they work in his hotel room despite their protests. 155 F.3d 1257, 1260-61 (10th Cir. 1998).

Benally was quick to assert that the unwelcome conduct was not sexual, but still gender-based. As most gender-based claims deal with sexuality, Benally might be more comfortable comparing age-based claims that do not involve sexual conduct. In Crawford v. Medina General Hosp., the employee pointed to several old age remarks by her supervisor, including "I don't think women over 55 should be working" and "older people should be seen and not heard." The supervisor also made fun of older employees' hearing and false teeth. Further, colleagues would equate being old with being stupid, useless, and dumb. Older employees were excluded from parties and office information. In affirming summary judgement

for the employer, the court noted that the incidents "indicate[d] hostility between coworkers rather than an age-related hostile environment." 96 F.3d 830, 833 (6th Cir. 1996).

If all Benally's claims are true, the situation is comparable to Crawford and does not rise to the level of a hostile work environment. In Crawford, as in the Benally case, suspect comments were not frequent, as they happened less than a handful of times over the years. Ricks was inconsiderate during evaluations and at most made two gender-related comments to other employees, not Benally. These incidents were not severe enough to interfere with the Benally's work. Benally, like Crawford, was able to perform her functions well. She received good written evaluations. Exclusion from parties or meetings was not often or severe, especially when Benally admits Ricks personally trained her each time she missed a meeting. A one-time insensitive comment about Benally's mother's death is not severely humiliating. There were no physical threats in either case. Benally claims that Ricks once purposefully stepped on her toe. This one-time incident did not cause her pain or severe humiliation. As stated above, discourtesy or rudeness is not sufficient. Therefore, the Court finds that Kennecott did not subject Benally to a legally cognizable hostile work environment.

2. *Benally provided insufficient evidence that the complained of conduct was motivated by gender animus.*

The Court finds Benally's claim that Ricks excluded her from safety meetings, denied her voluntary layoff, and her conjectures that he made two gender-based comments is insufficient to show that conduct was motivated by gender animus. Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim, if it is viewed in the context of other overtly gender discriminatory conduct. O'Shea v.

6

Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (1999). Conclusions of improper motivation without evidence is insufficient. Crawford 96 F.3d at 835 (two comments indicative of age-based animus was not sufficient to create an issue of fact for jury as to whether hostility was based on age).

Although there is some suggestion of facially neutral differing conditions between the way Ricks treated Benally as opposed to male employees (she was required to work alone, excluded from training, and was required to give frequent FMLA updates), Benally has provided no evidence of any overtly gender-related discriminatory conduct. Benally claims that Ricks commented that "women don't belong working here" or that "men do a better job than women," but does not even know when or to whom he made those comments. Even if those statements were admissible, alone, they are insufficient to show that Ricks' conduct was motivated by gender animus.

Benally specifically cites Harsco v. Renner, 475 F.3d. 1179 (10th Cir. 2007) to support her argument that facially neutral conduct can be hostile. The Court recognizes, as noted above, that facially neutral conduct can provide evidence of a hostile environment when accompanied by overtly gender-related conduct. In Renner, neutral acts such as spitting tobacco on the employee's car were considered in the totality of the circumstances only after hearing direct evidence of several incidences of incredibly vulgar sexually-related comments. Benally's case is different in that she hinted toward only two comments that someone said a supervisor said about gender in her workplace.

The Court finds that Benally's claim of hostile work environment fails on two

elements. First, any exclusion from meetings or requirements that she work alone were not frequent, severe, or pervasive enough to be objectively offensive. Second, Benally has presented no admissible evidence of any overt discriminatory behavior that could support a showing of gender animus.

**B.     Discrimination**

The Court finds that Benally's claim of disparate treatment cannot survive summary judgment as she has not shown gender animus or rebutted Kennecott's reason for termination. Benally contends that Kennecott discriminated against her because of her gender[1] in violation of 42 U.S.C. § 2000e *et seq.* The United States Supreme Court recognizes two theories to prove employment discrimination under Title VII: disparate treatment or disparate impact. See International Bhd. of Teamsters v. United States, 431 U.S. 324 (1977). Here, Benally has asserted only the former.

A plaintiff can prove disparate treatment in two ways. First, she can produce direct evidence that gender, "played a motivating part in [an] employment decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989). Then the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. Id. Alternatively, the plaintiff can proceed under the three-stage, burden-shifting standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once a prima facie case is established, the burden shifts to

---

[1]Benally initially claimed discrimination based on ethnicity also, but withdrew that claim during oral argument.

the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. If the employer succeeds, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. Texas Dept. of Comm Aff. v. Burdine, 450 U.S. 248, 248 (1981).

### 1. *Gender as a Motivating Factor*

Benally asserts she was set-up to be terminated because of gender animus. However, she presented no overt evidence of gender motivation. Benally claims only that Ricks commented, "women don't belong working here" or "men do a better job than women," but does not know when or to whom he made those comments. As a result, the Court sees no admissible evidence that gender was an overtly motivating factor.

### 2. *McDonnell Douglas Analysis*

Although evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuasion . . . remains at all times with the plaintiff." Id. at 253. This Court finds that Benally has failed to establish a prima facie case; further, she has provided no evidence to rebut Kennecott's proffered reason for termination.

> i. Benally has failed to establish the prima facie case, as she has not shown that similarly situated male employees were treated differently.

To establish a prima facie case for discrimination, plaintiff must show: (1) plaintiff was a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the position; and (4) she was treated less favorably than others not in the protected class. Sanchez v. Denver Public Schools, 164 F.3d 527, 531 (10th Cir. 1998).

9

Benally has satisfied parts (1) and (3) by establishing that she is female and capable of performing her job.

Regarding part (2), an adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Benally has established that she was denied voluntary layoff, placed on probation, and was fired. Because denial of the voluntary layoff and probation status did not cause a significant change in Benally's employment status, as her job continued without interruption and benefits did not change, those actions cannot be considered a significant change in employment status. Therefore, the only significant change in employment status suffered by Plaintiff was the termination of her employment.

Benally has shown no evidence that Kennecott treated her differently than any similarly-situated male employee (one with her years of experience, knowledge and probationary status). Benally has failed to produce any evidence that men who fail to follow lockout/tagout procedures are not subject to discipline. On the contrary, her male co-worker was fired simultaneously in connection with the September 22, 2004 incident. Because Benally has not differentiated herself from similarly situated male employees, the Court finds she has failed to show a prima facie case.

      ii.    Kennecott produced legitimate non-discriminatory reasons for terminating Benally.

Even though Benally has not proven a prima facie case, Kennecott still articulated legitimate non-discriminatory reasons for terminating her employment. To accomplish this part,

the defendant must clearly set forth, "through the introduction of admissible evidence, the reasons for the [adverse action]." McDonnell Douglas, 411 U.S. at 802. The defendant does not have to prove the reason by a preponderance of the evidence. Burdine, 450 U.S. at 248.

Kennecott asserts that it fired Benally for a safety violation that occurred on September 22, 2004. It cites this reason in the letter of termination issued to Benally. Her probationary status, resulting from four previous disciplinary actions, contributed to the termination decision. Kennecott has provided documentation of these other incidents and Benally's probation. By providing this information, Kennecott has fulfilled their part of the burden-shifting analysis.

### iii. Benally did not produce any evidence that Kennecott's proffered reason was merely a pretext for discrimination.

The issue here is whether Benally has produced evidence that could lead a reasonable jury to believe that her termination was not really due to her violations of company policy, as Kennecott contends, but was instead due to her gender. While instances of disparate treatment may support an inference of pretext, to prove disparate treatment, the plaintiff must show that he or she was "similarly situated in all relevant respects to a non-member of the protected class who was more favorably treated." Cronquist v. City of Minneapolis, 237 F.3d 920, 927 (8th Cir. 2001).

Benally responds to Kennecott's accusation by saying that she did not personally commit the safety violation. The evidence she provides from her co-workers shows that if someone is standing on the conveyor belt, the lockout procedure should be used. Her co-worker was standing on the conveyor belt and the machine was not locked out. Even if Benally was not

standing on the conveyor belt herself and could not see her co-worker doing so, she was still clearly involved in the incident. Kennecott strictly applied its policy. Benally has not shown that a male with her skills, tenure, and probationary status would not have been terminated given similar circumstances.

Benally failed to make any connection between her termination and gender animus. In addition, she failed to establish her prima facie case because she did not provide any evidence that she was treated differently than a similar situated employee. In fact, her male co-worker at the time of the September 22, 2004 incident was also terminated. Further, Kennecott pointed to Benally's probationary status and fifth policy violation as reason for her termination. Benally contends, without support, that this reason was pretextual. Therefore, Kennecott's motion for summary judgment is granted.

### C. Retaliation

Because Benally's EEOC complaint did not include a retaliation claim, Kennecott argues that this Court has no jurisdiction to hear it. Although exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII, the Tenth Circuit has said, "when an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." Zinke v. Slater, 34 Fed. Appx 667, 672 (10th Cir. 2002) (internal citation omitted).

Benally's claim of retaliation, though not mentioned in her original EEOC complaint, is substantially related to the discrimination and hostile work environment claims for

which she sought administrative remedies, as the fact base for each claim is the same. In light of the Tenth Circuit's view and for the sake of judicial efficiency, this Court should review the merits of Benally's retaliation claim as if it were properly plead.

Nevertheless, the Court holds that Benally's retaliation claim fails as a matter of law because she both failed to prove the prima facie case and to prove Kennecott's reason for its action was pretext. Title VII protects individuals who have "made a charge, testified, assisted, or participated in any investigation, proceeding, or hearing" from adverse employment action. 42 U.S.C.A. 2000e-3(a). To establish a prima facie case, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse action. Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1202 (10th Cir. 2006).

If a prima facie case is established, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for its actions. If the employer does so, the burden shifts back to the plaintiff to demonstrate the pretextual nature of the employer's proffered reason for its actions. McDonnell Douglas, 411 U.S. at 802. Benally's claim fails on three points: (i) she has provided no evidence that she engaged in a protected activity, (ii) even if she has included discrimination in her complaints, the adverse action was not close enough in time to show a causal connection, and (iii) even if she presented a prima facie case, she has not provided evidence to show that Kennecott's reason for termination was pretext.

> 1. *Benally has failed to prove a prima facie case because she has presented no evidence that she complained of discrimination prior to termination.*

13

Benally failed to prove her prima facie case because she has not provided evidence that she engaged in protected conduct prior to the adverse action. The protection applies if an individual communicates to his or her employer a belief that its activity constitutes a form of employment discrimination. McMillin v. Foodbrands Supply Chain Servs., Inc., 272 F. Supp.2d 1211, 1219. In order for an internal complaint to count, it must be reasonable for the employer to believe that what is being complained about is actually discriminatory–alleging unfair treatment is not enough. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001); See, e.g., Barber v. CSX Distrib. Services, 68 F.3d 694 (3d Cir. 1995). In Barber, a letter to the human resources department did not constitute protected conduct because the letter did not explicitly or implicitly allege that age was the reason for the unfairness. 68 F.3d at 702.

Similarly, Benally claims to have complained of unfairness to Superintendent Morrell and HR during her employment. First, she complained to Morrell in January 2003 and/or 2004. Although her complaint alleges that she complained of discriminatory treatment, Benally offers no evidence regarding what she told Morrell. Benally does not even offer an affirmative statement in her deposition or a line in any court-submitted document that says she told Morrell about a specific discriminatory instance. Even her Memo in Opposition to Summary Judgement, simply states that in January 2004 she "made informal complaints to Rick Morrell." Page 24.

In Morrell's affidavit, he says that when Benally complained in January 2003, she did not state anything about discrimination. Morrell Affidavit, paragraphs 13-15, 17. Instead, their conversation focused on the discipline she received due to her attendance record and FMLA leave. Id. Further, co-worker John Martinez says that Benally complained to Morrell about

safety, not discrimination, issues. Therefore, there is no *evidence* that Morrell had reasonable notice of Benally's discrimination concerns. Morrell does not provide any information about a conversation in January 2004.

Second, Benally complained to HR. In January 2003, Ricks asked Benally whether a tennis ball had caused a certain bruise on her neck. Ricks Affidavit, paragraph 33.[2] In response, HR reviewed the matter and found no discriminatory or inappropriate behavior on the part of Ricks. Heal Affidavit, paragraph 4. Still, HR required Ricks to participate in an online harrassment prevention tutorial. Heal Affidavit, paragraph 4; see also email from D. Drorbaugh (showing Ricks completed the course). As there was nothing objectively discriminatory about the incident and because there is no evidence that Benally suggested this incident was actually discriminatory, there was no reason for Kennecott to believe anything discriminatory was going on.

Benally claims that she submitted a formal complaint to HR in January 2004, following Ricks' insensitive comment about her mother. However, Benally does not provide evidence that she complained of or alluded to discrimination in her communication with HR. Kennecott has no record of this complaint. Because there is no evidence that either Benally's complaints to Morrell or to HR alleged any discriminatory conduct, Benally has failed to prove an essential element of the prima facie case, that she participated in a protected activity.

---

[2]Benally did not comment upon this incident anywhere in the record.

2. *Benally also fails to prove the causal connection piece of the prima facie case because even if one of the above complaints could be found to be a protected activity, it was not temporally proximate to her termination.*

Even if a complaint to Morrell or HR in early 2003 or January 2004 had mentioned discrimination, it was too far removed in time from her termination in September 2004 to infer a causal connection. If there is no direct evidence that the adverse action is the result of the protected activity, a causal connection can be inferred where the (1) employer knew about the protected activity and (2) there was temporal proximity between the protected activity and the adverse action. Breeden, 532 U.S. at 273. Temporal proximity must be "very close." Id. For example, the Tenth Circuit held a three month period between the protected activity and the adverse action to be too long. See Richmond v. ONEOK, Inc., 120 F.3d. 205, 209 (10th Cir. 1997). After citing the Tenth Circuit's Richmond decision, the Supreme Court said, "[a]ction taken . . . months later suggests, by itself, no causality at all." Breeden, 532 U.S. at 274.

If we consider Benally's claims to be true, her January 2003 complaint was 20 months prior to her termination. Even the most generous scenario puts her last complaint at January 2004. The adverse action followed in September 2004–eight full months later. Given the Tenth Circuit's position that a three month period is insufficient, this Court finds an eight month lapse is too tenuous to establish a causal connection.

3. *Benally has failed to produce any evidence that Kennecott's proffered reason is pretextual.*

Benally has offered no evidence that could render Kennecott's legitimate reason for termination unworthy of belief. In order to survive summary judgement, Plaintiff must

present evidence sufficient to lead a rational jury to find that Defendant's reasons for termination are "unworthy of credence." Burdine, 450 U.S. at 256. "Mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988).

Kennecott claims it terminated Benally's employment because of her violation of a safety standard while on probation for four previous policy violations. Aside from stating (1) her belief they fired her because she was a woman and fired her white male co-worker to cover it up, and (2) that she disagreed with being placed on probation, (neither of which address Kennecott's proffered reason for termination) Benally has not presented any evidence on the issue of pretext. Therefore, the claim fails.

Benally has failed to present any evidence that she notified Morrell or HR about the alleged discrimination prior to her termination. Therefore, she did not engage in any protected activity, which is required to establish a prima facie case of retaliation. Further her prima facie case fails because, according to Tenth Circuit and Supreme Court standards, even if her complaints count as protected activities, they are clearly not temporally proximate to the adverse action. Finally, even if Benally established a prima facie case, she presented no evidence to rebut Kennecott's proffered reason for termination. As a result, the Court grants judgment to Kennecott as a matter of law.

### IV. Conclusion

The Court denies Kennecott's motion to dismiss Benally's retaliation claim on the basis of jurisdiction. However, after considering the merits of the retaliation claim, as discussed

17

above, the court grants judgment as a matter of law for the defendant. In addition, looking at the case in the light most favorable to Benally, she has failed to sufficiently establish an inference of the existence of each element essential for her hostile work environment and discrimination claims.

Accordingly, Kennecott's motion for summary judgment on those issues is GRANTED and the case is CLOSED.

DATED this 9th day of April, 2007.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE